## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

_____

MARCUS HAMMONDS, on behalf of )
himself and all others similarly situated, )          Civil Action No.
                                          )
Plaintiffs,                               )
                                          )
v.                                        )          **JURY DEMANDED**
                                          )
APL CARGO, INC.; and INDY NATIONAL        )
LEASING, LLC,                             )
                                          )
Defendants.                               )
_____ )

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I.    INTRODUCTION.

1.    Plaintiff Marcus Hammonds brings this action on behalf of himself and other similarly situated individuals who have worked for Defendant APL Cargo, Inc. ("APL") as truck drivers and/or who have worked for APL as truck drivers and leased equipment from Defendant Indy National Leasing, LLC ("Indy National") (collectively, "Defendants").  Plaintiff alleges that APL failed to pay him and other drivers all the wages they were entitled to receive, in violation of the federal Fair Labor Standards Act ("FLSA") and Indiana state wage laws. Plaintiff also alleges that Defendants subjected him and other drivers to unfair and deceptive business practices, in violation of the Indiana Business Opportunity Transactions Act ("BOTA"), I.C. § 24-5-8 *et seq*.

2.    Plaintiff seeks damages on behalf of himself and other drivers arising from Defendants' unlawful practices, including, without limitation, all unpaid wages, liquidated damages, civil penalties as appropriate, appropriate ancillary relief, injunctive relief, interest, costs and attorneys' fees, and all other relief to which they are entitled.

3.    Plaintiff alleges the following:

4.    First, APL misclassified Plaintiff and other lease purchase drivers as independent contractors when they were, in fact, employees, in violation of federal law and Indiana state law.

5.    Second, APL failed to pay Plaintiff and other lease purchase drivers an hourly rate equal to or exceeding the applicable minimum wage for each hour they worked for the company, in violation of the FLSA.

6.    Third, APL subjected Plaintiff and other lease purchase drivers to assignments of wages that were not revocable, in violation of I.C. § 22-2-6-2(a)(1)(C).

7.    Fourth, APL subjected Plaintiff and other lease purchase drivers to invalid assignments of wages, in violation of I.C. § 22-2-6-2(b).

8.    Fifth, APL failed to timely pay Plaintiff and other lease purchase drivers for all the wages they earned, in violation of the Indiana Wage Payment Statute, I.C. § 22-2-5-1.

9.    Sixth, Defendants' contracts and relationships with Plaintiff and other lease purchase drivers violated the Indiana BOTA, I.C. § 24-5-8 *et seq*.

**A.    APL.**

10.    APL made claims about drivers' earning potential but failed to provide them with data to substantiate those claims, in violation of the Indiana BOTA, I.C. § 24-5-8-5.

11.    APL failed to provide lease purchase drivers with statutorily required disclosures concerning the business opportunities the company offered them, in violation of the Indiana BOTA, I.C. § 24-5-8-2.

**B.    Indy National.**

12.    Indy National failed to provide lease purchase drivers with statutorily required disclosures concerning the business opportunities the company offered them, in violation of the Indiana BOTA, I.C. § 24-5-8-2.

13.    Indy National failed to provide lease purchase drivers with notice of their right to cancel their equipment leases within 30 days of executing them, in violation of the Indiana BOTA, I.C. § 24-5-8-6(b)(6).

14.    Indy National failed to include in contracts with lessors the name and business address of an agent in Indiana who is authorized to receive service of process for the company, in violation the Indiana BOTA, I.C. § 24-5-8-6(b)(1).

## II.    PARTIES.

15.    Plaintiff Marcus Hammonds is an adult resident of St. Louis, Missouri.  From in or about December 2021 until in or about June 2022, he worked as a lease purchase driver for APL and leased equipment from APL and/or Indy National.  APL misclassified Plaintiff as an independent contractor when he was really the company's "employee" within the meaning of the FLSA and Indiana state law.  APL failed to pay him all the wages he was entitled to receive. Plaintiff was an "investor" within the meaning of the Indiana BOTA.  APL's and/or Indy National's lease arrangements with Plaintiff violated the Indiana BOTA.

16.    Plaintiff brings federal law and Indiana state law claims against APL on behalf of himself and several classes of similarly situated individuals who have worked for the company as drivers.

17.    For the FLSA claims against APL, Plaintiff brings this action on behalf of all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29

U.S.C. § 216(b). The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. § 216(b).

18.    Plaintiff and all others similarly situated are individually covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

19.    Pursuant to 29 U.S.C. § 216(b), Plaintiff consents to sue as a plaintiff under the FLSA. His consent to sue form is attached as Exhibit A.

20.    For the Indiana state wage law claims against APL, Plaintiff brings this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class for these claims meets the requirements of Rule 23 for class certification.

21.    For the Indiana BOTA claims against APL, Plaintiff brings this action on behalf of all similarly situated individuals pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class for these claims meets the requirements of Rule 23 for class certification.

22.    Plaintiff brings Indiana BOTA claims against Indy National on behalf of himself and all others similarly situated, namely all other individuals who leased a truck and/or trailer from Indy National and used it to drive for APL.

23.    Plaintiff brings those claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class for these claims meets the requirements of Rule 23 for class certification.

24.    APL is an Indiana corporation that employs individuals (including Plaintiff) as drivers. APL is located in Wolcott, Indiana. On information and belief, APL has revenues in excess of $500,000 per year and it has employed two or more persons, including Plaintiff, who handled and worked on materials which had been moved in interstate commerce. APL was an

"employer" of Plaintiff and other similarly situated drivers within the meaning of the FLSA and the Indiana state wage laws, and a "seller" within the meaning of the Indiana BOTA.

25.     Indy National is an Indiana limited liability company that sells and leases trucking equipment.  Indy National is a "seller" within the meaning of the Indiana BOTA.

## III.    JURISDICTION AND VENUE.

26.     This Court has subject matter jurisdiction under 29 U.S.C. § 216(b) and under 28 U.S.C. § 1331 because this case arises under the laws of the United States.  Specifically, this action arises under the FLSA, 29 U.S.C. § 201, et seq.

27.     This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.

28.     This Court has personal jurisdiction over Defendants pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure because Defendants are subject to the jurisdiction of a court of general jurisdiction in the State of Indiana; and the United States District Court for the Northern District Court of Indiana is in Indiana.

29.     Venue is proper in the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1391(b) because the District Court has jurisdiction over White County, Indiana, and Defendants are citizens of that county.

## IV.    FACTS.

### A.    APL.

30.     APL is a motor carrier based in Indiana.

31.     APL offers nationwide transportation of goods and/or freight.

32.     APL is located at the same address as Indy National.

33.     Stefan Trifan is the Chairman and President of APL.

34.     APL sells and/or leases and/or offers to sell and/or lease trucks, trucking equipment, and/or trucking services that are used by drivers for beginning and/or operating a trucking business.

35.     Individuals who buy and/or lease trucks, trucking equipment, and/or trucking services from APL for the purpose of working for the company as a driver and transport goods in interstate commerce for its customers are known as "lease purchase drivers."

36.     To buy or lease trucks, trucking equipment, and/or trucking services, lease purchase drivers must make an initial payment to APL of more than $500 and initial cash payment of less than $50,000.

37.     In or about December 2021, APL hired Plaintiff as a lease purchase driver.

38.     Plaintiff worked for APL out of its facility in Wolcott, Indiana.

39.     During all times relevant to this action, APL employed Plaintiff and all other drivers in an "enterprise engaged in commerce or in the production of goods for commerce," as defined by 29 U.S.C. § 203(s)(1).

40.     During all times relevant to this action, APL employed Plaintiff and all other drivers to handle and otherwise work on goods or materials that had been moved in or were produced for commerce by any person.

**B.     Indy National.**

41.     Indy National is a trucking equipment dealer in Indiana.

42.     Indy National sells and/or leases and/or offers to sell and/or lease trucks and trailers that are used by drivers for beginning and/or operating a trucking business.

43.     Indy National is located at the same address as APL.

44.    Stefan Trifan is the sole manager of Indy National.

45.    On or about December 21, 2021, Plaintiff leased a truck from Indy National for the express purpose of using it to transport goods in interstate commerce for APL.

46.    The terms of Plaintiff's truck lease with Indy National are memorialized in a contract titled, "Commercial Equipment Lease for Sales Agreement" ("CELSA").[1]

47.    The CELSA requires an initial payment by lessors like Plaintiff of more than $500 and an initial cash payment of less than $50,000.

48.    On or about December 21, 2021, Plaintiff leased a trailer from Indy National for the express purpose of using it to transport goods in interstate commerce for APL.

49.    The terms of Plaintiff's trailer lease with Indy National are memorialized in a contract titled, "Commercial Equipment Lease for Rental Agreement" ("CELRA").[2]

50.    The CELRA requires an initial payment by lessors like Plaintiff of more than $500 and an initial cash payment of less than $50,000.

**C.    APL misclassified Plaintiff and other lease purchase drivers as independent contractors.**

51.    APL classified Plaintiff as an independent contractor.

52.    Plaintiff was really APL's employee.

53.    On information and belief, APL classified all lease purchase drivers as independent contractors.

54.    Lease purchase drivers were really APL's employees.

55.    On information and belief, APL utilizes both employees and lease purchase drivers to transport goods in interstate commerce for its customers.

---

[1] Attached as Exhibit 1.
[2] Attached as Exhibit 2.

56.     On information and belief, Plaintiff and all other lease purchase drivers perform the same services for APL as drivers the company classified as employees.

57.     APL presented the terms of employment to Plaintiff and other lease purchase drivers on a take-it-or-leave-it basis.

58.     On information and belief, APL presented the terms of compensation to Plaintiff and other lease purchase drivers on a take-it or leave-it basis.

59.     APL and Indy National conspired to prevent Plaintiff and other lease purchase drivers from working for any carrier other than APL.

60.     Plaintiff could not use the truck or trailer he leased from Indy National to provide services to any carriers other than APL without prior written permission from APL.

61.     On information and belief, no lease purchase drivers could use trucks or trailers leased from Indy National to provide services to any carriers other than APL without prior written permission from APL.

62.     Plaintiff and other lease purchase drivers were economically dependent on APL's business.

63.     APL had exclusive authority over the rates customers were billed for services provided by Plaintiff and other lease purchase drivers.

64.     APL issued all bills to customers for services provided by Plaintiff and other lease purchase drivers.

65.     APL collected all compensation from its customers for services provided by Plaintiff and other lease purchase drivers.

66.     APL paid Plaintiff and all other lease purchase drivers for their services.

67.    APL's customers did not pay Plaintiff or other lease purchase drivers for their services.

68.    APL determined the method used to pay Plaintiff and other lease purchase drivers for their services.

69.    APL paid Plaintiff and all other lease purchase drivers a percentage of the amount the company billed customers for the services Plaintiff and other drivers provided.

70.    APL determined the percentage it paid Plaintiff and other lease purchase drivers of the amount the company billed customers for the services Plaintiff and other drivers provided.

71.    APL determined the types of deductions and chargebacks it took from the compensation paid to Plaintiff and other lease purchase drivers.

72.    APL determined the amounts of the deductions and chargebacks it took from the compensation paid to Plaintiff and other lease purchase drivers.

73.    APL determined the pay periods for which Plaintiff and other lease purchase drivers received compensation for their services.

**D.    APL failed to pay Plaintiff and other drivers all the wages they were entitled to receive under the FLSA and Indiana state wage laws.**

**i.    FLSA.**

74.    APL paid Plaintiff on a weekly basis.

75.    During multiple weeks, APL failed to pay Plaintiff an hourly rate equal to or exceeding minimum wage for each hour he worked for the company.

76.    During multiple weeks, the total amount of deductions APL took from Plaintiff's wages exceeded the total amount of gross wages he had earned.

77.     For example, Plaintiff worked multiple hours for APL during the weeklong pay periods ending March 20, 2022 and April 3, 2022.

78.     APL paid Plaintiff nothing for the hours he worked during those pay periods – i.e. $0.00 an hour – because the total amount of deductions taken from Plaintiff's wages exceeded the total amount of gross wages he had earned.

79.     On information and belief, APL did not pay other lease purchase drivers an hourly rate equal to or exceeding minimum wage for each hour they worked for the company.

80.     Defendant's violations of the FLSA, as described herein, were willful and in reckless disregard for Plaintiff's and other similarly situated drivers' rights under the FLSA.

**ii.    Indiana state wage laws.**

81.     Indiana state wage law requires that payment shall be made by employers to employees for all wages earned to a date not more than 10 business days prior to the date of payment. *See* I.C. § 22-2-5-1(b).

82.     Indiana state wage law permits employers to take certain deductions from the wages paid to employees, which are considered assignments of wages. *See* I.C. § 22-2-6-1(a); *see also* I.C. § 22-2-6-2(b).

83.     Any such wage assignments must be revocable at any time by the employee upon written notice to the employer. *See id*. at § 22-2-6-2(a)(1)(C).

84.     APL took deductions from the wages it paid Plaintiff for various costs and expenses.

85.     On information and belief, APL took deductions for various costs and expenses from the wages it paid all lease purchase drivers.

86.     The deductions were invalid "assignments" under Indiana state wage laws for two primary reasons. *See* I.C. § 22-2-6-1(a); *see also* I.C. § 22-2-6-2 *et seq*.

87.     First, APL did not permit lease purchase drivers to revoke the deductions.

88.  Second, APL took the deductions for the purpose of paying costs and/or expenses that are not authorized by Indiana state wage laws, and, therefore, are invalid assignments. *See* I.C. § 22-2-6-1(a).

89.  For example, in a settlement statement dated March 3, 2022, APL took numerous deductions for assignments from the wages it paid Plaintiff that are not permitted by Indiana state wage laws, such as deductions for a promissory note, admin fee, and security deposit. *See id*.

90.  On information and belief, APL took the same or similar deductions from the wages the company paid other lease purchase drivers.

91.  By taking deductions for invalid assignments from the wages paid to Plaintiff and other lease purchase drivers, APL failed to timely pay them all the wages they were entitled to receive.

92.  APL's violations of the Indiana state wage laws, as described herein, were committed in bad faith.

**E.    APL violated the Indiana BOTA.**

93.  APL's business of selling and/or leasing of trucks, trucking equipment, and/or trucking services that are used by drivers for beginning and/or operating a trucking business, and offers to sell or lease the same, are "business opportunities" under the Indiana BOTA. *See* I.C. § 24-5-8-1.

94.  Drivers who buy or lease trucks, trucking equipment, and/or trucking services from APL are "investors" under the Indiana BOTA. *See id*.

95.  APL's sales and/or leases of trucks, trucking equipment, and/or trucking services, and offers to sell or lease the same, violated the Indiana BOTA in several ways.

96.     First, the Indiana BOTA requires sellers to provide investors with certain data to substantiate any claims made about earning potential.  *See* I.C. § 24-5-8-5.

97.     APL makes claims on its website about the amount of compensation its drivers earn.

98.     For example, APL represents that lease purchase drivers earn "[a]verage weekly gross pay of $7,000 to $10,000."  *See* https://www.aplloads.com/lease-rental-purchase/ (last visited Oct. 11, 2022).

99.     APL represents that "mileage drivers" earn "[a]verage weekly gross pay of $1,650 – $1,800."  *See* https://www.aplloads.com/lease-rental-purchase/ (last visited Oct. 11, 2022).

100.    APL represents that it provides "owner/operators" a "generous benefits package that includes," among other things, "[c]ompetitive pay – 88% of the load revenue puts your average weekly gross pay at $8,000 – $10,000."  *See* https://www.aplloads.com/owners-operators/ (last visited Oct. 11, 2022).

101.    APL never provided Plaintiff with the statutorily required data to substantiate the company's claims about drivers' earning potential, in violation of the Indiana BOTA, I.C. § 24-5-8-5.

102.    On information and belief, APL never provided any drivers with the statutorily required data to substantiate the company's claims about drivers' earning potential, in violation of the Indiana BOTA, I.C. § 24-5-8-5.

103.    Second, the Indiana BOTA requires sellers to provide investors with a disclosure document and cover sheet with statutorily required information.  *See* I.C. § 24-5-8-2.

104.    APL never provided Plaintiff with a disclosure document or cover sheet with the statutorily required information concerning the business opportunity the company offered to him, in violation of the Indiana BOTA, I.C. § 24-5-8-2.

105.    On information and belief, APL never provided any lease purchase drivers with a disclosure document or cover sheet with the statutorily required information concerning the business opportunity the company offered them, in violation of the Indianan BOTA, I.C. § 24-5-8-2.

**F.    Indy National violated the Indiana BOTA.**

106.    Indy National's leasing of trucks, trucking equipment, and/or trucking services, and offers to lease the same, are "business opportunities" under the Indiana BOTA.  *See* I.C. § 24-5-8-1.

107.    Individuals who lease trucks and/or trailers from Indy National are "investors" under the Indiana BOTA.  *See id*.

108.    Indy National's leasing of trucks, trucking equipment, and/or trucking services, and offers to lease the same, violated the Indiana BOTA in several ways.

109.    First, the Indiana BOTA requires sellers to provide investors with a disclosure document and cover sheet with statutorily required information.  *See* I.C. § 24-5-8-2.

110.    Indy National never provided Plaintiff with a disclosure document or cover sheet with the statutorily required information concerning the business opportunity the company offered to him, in violation of the Indiana BOTA, I.C. § 24-5-8-2.

111.    On information and belief, Indy National never provided any individuals with a disclosure document or cover sheet with the statutorily required information concerning the

business opportunity the company offered them, in violation of the Indiana BOTA, I.C. § 24-5-8-2.

112.    Second, the Indiana BOTA requires sellers to provide investors with notice of their right to cancel leases within 30 days of executing them in compliance with I.C. § 24-5-8-6(b)(6).

113.    Indy National failed to provide Plaintiff any notice of his right to cancel his truck and/or trailer leases within 30 days of executing them, in violation of the Indiana BOTA, I.C. § 24-5-8-6(b)(6).

114.    On information and belief, Indy National failed to provide any lease purchase driver with any notice of his or her right to cancel their truck and/or trailer leases within 30 days of executing them, in violation of the Indiana BOTA, I.C. § 24-5-8-6(b)(6).

115.    Third, the Indiana BOTA requires sellers to include in contracts with lessors the name and business address of an agent in Indiana who is authorized to receive service of process for the company. *See* I.C. § 24-5-8-6(b)(1).

116.    Indy National failed to include in the contract with Plaintiff the name and business address of an agent in Indiana who was authorized to receive service of process for the company, in violation of the Indiana BOTA, I.C. § 24-5-8-6(b)(1).

117.    On information and belief, Indy National failed to include in its contracts with drivers the name and business address of an agent in Indiana who was authorized to receive service of process for the company, in violation of the Indiana BOTA, I.C. § 24-5-8-6(b)(1).

## V.    FLSA COLLECTIVE ACTION ALLEGATIONS AGAINST APL.

### A.    Minimum wage for all hours worked.

118.    Plaintiff asserts FLSA wage claims concerning the hours drivers worked for APL

on behalf on behalf of a collective of drivers pursuant to 29 U.S.C. § 216(b).

119.    Pending any modifications necessitated by discovery, Plaintiff preliminarily

defines the collective as follows:

> ALL INDIVIDUALS WHO WORKED AS A LEASE PURCHASE DRIVER
> FOR APL DURING THE APPLICABLE STATUTORY PERIOD AND DID
> NOT RECEIVE AN HOURLY RATE EQUAL TO OR EXCEEDING
> FEDERAL MINIMUM WAGE FOR EACH HOUR THEY WORKED.

120.    These claims meet the requirements for collective action certification under the

FLSA.

121.    All potential opt-in plaintiffs are similarly situated with respect to the FLSA

claims because they worked as drivers for APL but did not receive an hourly rate equal to or

exceeding federal minimum wage for each hour that they worked.

## VI.    RULE 23 CLASS ACTION ALLEGATIONS AGAINST APL.

### A.    Indiana state law wage claims.

122.    Plaintiff asserts Indiana state law wage claims against APL on behalf of a class

pursuant to Fed. R. Civ. P. 23.

123.    Pending any modifications necessitated by discovery, Plaintiff preliminarily

defines the class as follows:

> ALL INDIVIDUALS WHOM APL ENGAGED AS DRIVERS TO
> TRANSPORT GOODS IN INTERSTATE COMMERCE AND SUBJECTED TO
> INVALID ASSIGNMENTS OF WAGES THEY EARNED.

124.    All potential plaintiffs in this class are similarly situated with respect to the Indiana state law wage claims because APL subjected them to irrevocable assignments of wages and/or assignments of wages that were not authorized by Indiana state wage laws.

125.    By subjecting Plaintiff and other similarly situated drivers to invalid wage assignments, APL failed to timely pay them wages.

126.    APL committed this violation of Indiana state wage laws in bad faith.

127.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members exceeds 40.

128.    There are issues of law and fact common to all class members because APL subjected all class members to invalid wage assignments.  The common questions of law and fact predominate over any questions affecting individual class members.

129.    Plaintiff's claims are typical of the claims of all members of the class because all members of the class were subject to the same unlawful practices.

130.    Plaintiff and his counsel will fairly and adequately represent the interests of the class.

131.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff as well as to every absent member of the proposed class.

132.    A class action is superior for this claim for several reasons including, but not limited to, that:  the claim challenges uniform wage payment and deduction practices; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it

would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

133.    Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded employees by Indiana state wage laws, whose individual claims may be too small to warrant the expense of litigation.

134.    The contours of the class will be easily defined by reference to business records kept by APL.

135.    APL has acted on grounds generally applicable to the class.

**B.      Indiana BOTA claims.**

136.    Plaintiff asserts Indiana BOTA claims against APL on behalf of a class pursuant to Fed. R. Civ. P. 23.

137.    Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the class as follows:

> ALL INDIVIDUALS WHO HAVE WORKED AS LEASE PURCHASE DRIVERS FOR APL AT ANY TIME DURING THE APPLICABLE STATUTORY PERIOD.

138.    All potential plaintiffs in this class are similarly situated with respect to the Indiana BOTA claims because APL failed to provide them with data to substantiate the company's claims about drivers' earning potential and/or with disclosure documents or cover sheets concerning the business opportunity the company offered them.

139.    By failing to provide Plaintiff and other lease purchase drivers with statutorily mandated information, APL violated the Indiana BOTA.

140.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members exceeds 40.

141.    There are issues of law and fact common to all class members because APL failed to provide them with the same statutorily mandated information.  The common questions of law and fact predominate over any questions affecting individual class members.

142.    Plaintiff's claims are typical of the claims of all members of the class because all members of the class were subject to the same unlawful practices.

143.    Plaintiff and his counsel will fairly and adequately represent the interests of the class.

144.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff as well as to every absent member of the proposed class.

145.    A class action is superior for this claim for several reasons including, but not limited to, that: the claim challenges APL's standard business practices and/or policies; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

146.    Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the Indiana BOTA to investors, whose individual claims may be too small to warrant the expense of litigation.

147.    The contours of the class will be easily defined by reference to business records kept by APL.

148.    APL has acted on grounds generally applicable to the class.

## VII.    RULE 23 CLASS ACTION ALLEGATIONS AGAINST INDY NATIONAL.

### A.    Indiana BOTA claims.

149.    Plaintiff asserts Indiana BOTA claims against Indy National on behalf of a class pursuant to Fed. R. Civ. P. 23.

150.    Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the class as follows:

> ALL INDIVIDUALS WHO HAVE EXECUTED THE CELSA AND/OR CELRA (OR SIMILAR CONTRACT) AT ANY TIME DURING THE APPLICABLE STATUTORY PERIOD.

151.    All potential plaintiffs in this class are similarly situated with respect to the Indiana BOTA claims because Indy National failed to provide them with disclosure documents or cover sheets concerning the business opportunity the company offered them, failed to provide them with notice of their right to cancel their equipment leases within 30 days of executing the leases, failed to include its business address in the CELSA and/or CELRA (or similar contract), and/or failed to include in the CELSA and/or CELRA (or similar contract) the name and business address of an agent in Indiana who was authorized to receive service of process for the company.

152.    By failing to provide Plaintiff and other lease purchase drivers with statutorily mandated information, Indy National violated the Indiana BOTA.

153.    The members of the class are so numerous that joinder of all of them is impracticable.  On information and belief, the number of class members exceeds 40.

154.    There are issues of law and fact common to all class members because Indy National failed to provide them with the same statutorily mandated information.  The common questions of law and fact predominate over any questions affecting individual class members.

19

155.    Plaintiff's claims are typical of the claims of all members of the class because all members of the class were subject to the same unlawful practices.

156.    Plaintiff and his counsel will fairly and adequately represent the interests of the class.

157.    The claims asserted on behalf of the class predominate over any question of law or fact affecting only individual members of the class.  The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff as well as to every absent member of the proposed class.

158.    A class action is superior for this claim for several reasons including, but not limited to, that:  the claim challenges Indy National's standard business practices and/or policies; many employees may be reluctant to bring claims individually for fear of retaliation; some class members may not have the motivation or resources to bring their claims individually; and it would be an inefficient use of scarce judicial resources to require each employee affected by the practices challenged herein to bring his or her own individual claim.

159.    Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the Indiana BOTA to investors, whose individual claims may be too small to warrant the expense of litigation.

160.    The contours of the class will be easily defined by reference to business records kept by Indy National.

161.    Indy National has acted on grounds generally applicable to the class.

## COUNT I – FLSA CLAIMS AGAINST APL
### (Minimum Wage Class Claim for All Hours Worked)

APL's conduct, in failing to pay its drivers at least minimum wage for all hours worked, violates the FLSA, 29 U.S.C. § 201, *et seq*. This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to 29 U.S.C. § 216(b).

## COUNT II – INDIANA STATE WAGE LAW CLAIMS AGAINST APL
### (Irrevocable Wage Assignments)

APL's conduct, in taking irrevocable wage assignments from drivers' wages, violates I.C. § 22-2-6-2(a)(1)(C). This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT III – INDIANA STATE WAGE LAW CLAIMS AGAINST APL
### (Invalid Wage Assignments)

APL's conduct, in taking invalid wage assignments from drivers' wages, violates I.C. § 22-2-6-2(b). This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT IV – INDIANA STATE WAGE LAW CLAIMS AGAINST APL
### (Failure to Timely Pay Wages)

APL's conduct, in taking invalid wage assignments from drivers' wages, violates I.C. § 22-2-5-1. This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT V – INDIANA BOTA CLAIMS AGAINST APL
### (Failure to provide data to substantiate claims about drivers' earning potential)

APL's conduct, in making claims about drivers' earning potential but failing to provide data to substantiate those claims, violates I.C. § 24-5-8-5. This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT VI – INDIANA BOTA CLAIMS AGAINST APL
### (Failure to provide drivers with statutorily mandated disclosures)

APL's conduct, in failing to provide drivers with statutorily mandated disclosures, violates the Indiana BOTA, I.C. § 24-5-8-2. This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT VII – INDIANA BOTA CLAIMS AGAINST INDY LEASING
### (Failure to provide drivers with statutorily mandated disclosures)

Indy National's conduct, in failing to provide drivers with statutorily mandated disclosures, violates the Indiana BOTA, I.C. § 24-5-8-2. This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT VIII – INDIANA BOTA CLAIMS AGAINST INDY LEASING
### (Failure to provide drivers with notice of right to cancel leases)

Indy National's conduct, in failing to provide lessors with notice of their right to cancel their equipment leases within 30 days of executing them, violates the Indiana BOTA, I.C. § 24-5-8-6(b)(6). This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT IX – INDIANA BOTA CLAIMS AGAINST INDY LEASING
### (Failure to include the company's business address in contracts with drivers)

Indy National's conduct, in failing to include its business address in contracts with lessors, violated the Indiana BOTA, I.C. § 24-5-8-6(b)(1). This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23.

## COUNT X – INDIANA BOTA CLAIMS AGAINST INDY LEASING
### (Failure to include in contracts with drivers the name and business address of agent in Indiana who was authorized to receive service of process)

Indy National's conduct, in failing to include in contracts with lessors the name and business address of an agent in Indiana who was authorized to receive service of process for the company,

violated the Indiana BOTA, I.C. § 24-5-8-6(b)(1).  This claim is brought on behalf of the named Plaintiff and all other similarly situated individuals pursuant to Fed. R. Civ. P. 23**.**

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a.      Certification of an opt-in class of Plaintiff's FLSA claims against APL pursuant to the FLSA, 29 U.S.C. § 201, et seq.;

b.      Permission for Plaintiff to notify fellow employees of their right to opt into this action to pursue a claim against APL under the FLSA, pursuant to 29 U.S.C. § 216(b);

c.      Certification of the Indiana state wage law claims against APL as a class action under Fed. R. Civ. P. 23;

d.      An award of damages against APL for all minimum wages, unlawful wage assignments, and other unpaid wages that are due to Plaintiff and all similarly situated employees under the FLSA;

e.      Statutory liquidated damages against APL under the FLSA;

f.      A finding that APL's violation of the FLSA was willful and that, therefore, the statute of limitations for the FLSA claim is three years;

g.      An award of damages against APL for all minimum wages, unlawful deductions, and other unpaid wages that are due to Plaintiff and all similarly situated individuals under Indiana state wage laws;

h.      A finding that APL's violation of Indiana state wage laws was willful and that, therefore, Plaintiff and all other similarly situated individuals are entitled to liquidated damages;

i.      Certification of the Indiana BOTA claims against APL as a class action under Fed. R. Civ. P. 23;

j.      A judgment against APL for all damages drivers sustained as a result of the company's violations of the Indiana BOTA;

k.      Injunctive relief requiring APL to comply fully with the Indiana BOTA in its contracts with drivers;

l.      Certification of the Indiana BOTA claims against Indy National as a class action under Fed. R. Civ. P. 23;

m.      A judgment against Indy National for all damages drivers sustained as a result of the company's violations of the Indiana BOTA;

n.      Injunctive relief requiring Indy National to comply fully with the Indiana BOTA in its contracts with drivers;

o.      A finding that the CELSA is void and that Plaintiff and all other similarly situated individuals are entitled to a return from Indy National of all consideration Plaintiff and all other similarly situated individuals paid to the company;

p.      A finding that the CELRA is void and that Plaintiff and all other similarly situated individuals are entitled to a return from Indy National of all consideration Plaintiff and all other similarly situated individuals paid to the company;

q.      An award of attorneys' fees and costs;

r.      Pre- and post-judgment interest; and

s.      Any other relief to which Plaintiff and similarly situated employees may be entitled.

Respectfully submitted,

MARCUS HAMMONDS, on behalf of
himself and all others similarly situated,

By his attorneys,

/s/ Brook S. Lane
Hillary Schwab, WIED #1043199
Brook S. Lane*
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
www.fairworklaw.com
hillary@fairworklaw.com
brook@fairworklaw.com

*\* PRO HAC VICE ADMISSION PENDING*

Dated: April 21, 2023

25